# 96 DTA 115

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE SAN JUAN**

NITZA M. DE AYALA PABON
Demandante-Recurrida

v.

JORGE A. RIVERA HUERTAS
Demandado-Peticionario

Núm. KLCE-96-00646

RECEIVED

DEC 17 1996

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

San Juan, Puerto Rico, a 17 de septiembre de 1996

Panel integrado por su presidente, Juez Negrón Soto
y los Jueces González Román y Urgell Cuebas

Negrón Soto, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

El señor Jorge A. Rivera Huertas, peticionario, presentó este recurso de *Certiorari* el 1 de julio de 1996, solicitando se revocara una orden emitida por el Tribunal de Primera Instancia el 27 de junio pasado. Acompañó una moción en auxilio de jurisdicción a los fines de evitar su encarcelamiento. En dicha orden se instruyó al peticionario a comparecer a la vista pautada para el 1 de julio de 1996 y acreditar ante dicho foro haber efectúado el pago de la cantidad adeudada por concepto de pensión alimentaria, más los intereses legales de dicha cantidad, so pena de arresto y encarcelación inmediatamente ese día. Atendiendo una moción de reconsideración presentada por el peticionario al tribunal recurrido, previa al recurso de *certiorari*, dicho foro emitió ese mismo día una escueta resolución dejando sin efecto la orden del pago inmediato de la deuda.

En atención a esa resolución, el 5 de julio siguiente declaramos sin lugar la Moción en Auxilio de Jurisdicción. Además, ordenamos a la recurrida que se expresara sobre los méritos del recurso. El 3 de julio de 1996 el Tribunal de Primera Instancia emitió una resolución fundamentada. Ambas partes presentaron sus respectivos alegatos. ■ Aunque la controversia envuelta en este recurso gira sólo en torno a una estipulación de una deuda por alimentos adeudados por el peticionario a la recurrida, consideramos necesario consignar los hechos pertinentes a lo planteado.

### I

El 25 de agosto de 1978, se decretó disuelto el vínculo matrimonial existente entre las partes por la causal de trato cruel. Las partes procrearon un hijo durante la vigencia del matrimonio. La custodia de ese menor de edad se le concedió a la madre recurrida y la patria potestad fue compartida entre sus padres. Para beneficio del menor se estipuló que el padre pagaría una pensión alimentaria de cincuenta dólares ($50.00) quincenales. Posteriormente, mediante estipulación suscrita por las partes el 25 de agosto de 1982, la custodia del menor fue conferida al peticionario. En ese momento se le relevó del pago de la pensión alimentaria.

Por recomendación de la Trabajadora Social y mediante resolución de 1 de agosto de 1991 se acordó entre las partes que la custodia del menor, quien en ese momento contaba con 15 años de edad, sería compartida entre el peticionario y la abuela materna. Se fijó una pensión alimentaria provisional de ciento cincuenta dólares ($150.00) mensuales a ser entregados a la abuela materna. También se determinó la existencia de una deuda de dos mil dólares ($2,000) por concepto de los gastos que dicha abuela incurrió durante el año escolar de 1990 al 1991, la cual sería satisfecha por el recurrente en plazos de cincuenta dólares ($50.00) mensuales. Posteriormente, el 5 de diciembre de 1991, se celebró una vista en la que se ratificaron dichas determinaciones.

El 11 de mayo de 1994, la madre del menor, aquí recurrida, presentó una moción de estipulación sobre custodia, en la cual la abuela materna, quien ostentaba la custodia del menor, le cedió la misma. Se celebró una vista el 19 de septiembre de 1994 en relación a dicha moción y el tribunal ratificó la estipulación presentada, otorgándole la custodia legal a la recurrida. Nada se expresó en relación a la pensión alimentaria. Aunque el peticionario alegó que nunca fue notificado de dicha vista, la custodia del menor allí concedida no está en controversia. Atendiendo varias mociones de la recurrida sosteniendo el incumplimiento del recurrente con el pago de la pensión alimentaria, en donde en una del 2 de marzo de 1995 solicitó que se le encontrara incurso en desacato por adeudar $9,610.96 y en otra posterior alegó que existía una deuda de $12,294.28 al 15 de septiembre de 1995, el tribunal celebró una vista el 2 de octubre de 1995 ante la Jueza Superior, Hon. Amneris Martínez de Cuevas, donde se origina la controversia planteada en este recurso. Según se desprende de la minuta de esa fecha, las partes estipularon que la deuda del peticionario ascendía a la cantidad de siete mil doscientos ($7,200) dólares, acuerdo que es objeto de la controversia ante este foro.

El 22 de noviembre de 1995, el peticionario presentó una moción en la cual solicitó que el tribunal dejara sin efecto todo lo actuado en dicha vista. Alegó, en síntesis, que no se le concedió a su abogado, Licenciado Pedro Sálamo Pérez, la suspensión de la vista solicitada; que la recurrida no

tenía capacidad jurídica para hacer dicho reclamo por no ser la persona asignada a recibir la pensión dispuesta por el tribunal; y que ese foro fue inducido a error por la recurrida, pues no tuvo la oportunidad de entender los asuntos pendientes por la premura con que se celebró la vista. No obstante, *"en acto de buena fe"* abonó a la deuda la cantidad de mil cuatrocientos ochenta y seis dólares con noventa y cinco centavos ($1,486.95), lo que reducía la deuda a cinco mil setecientos trece dólares con cinco centavos ($5,713.05). Esta moción fue considerada por el tribunal en la vista celebrada el 11 de abril de 1996 ante otro juez, Honorable Jorge Orama Monroig. En esa audiencia el peticionario indicó que no existía tal deuda ni reconocía la estipulación antes mencionada. El Juez recurrido señaló que llevaría ese asunto a la atención de la Hon. Amneris Martínez de Cuevas, quien presidió la vista en la cual se estipuló la deuda. Aunque no surge que entonces se celebrara vista alguna ante la Jueza Martínez de Cuevas ni que ésta emitiera ningún dictamen, posteriormente ▇ el Juez recurrido indicó que él y ella escucharon la grabación de la audiencia del 2 de octubre de 1995, asegurándose que de la misma se desprendía lo recogido en la minuta de esa fecha y lo resuelto por el tribunal. Por ello concluyó que la deuda había sido debidamente estipulada por las partes.

En moción del 19 de abril de 1996 el peticionario reiteró que se dejara sin efecto todo lo actuado, relativo a dicha estipulación sobre lo adeudado. Volvió a fundamentarlo en que su anterior abogado estuvo obligado a renunciarle la representación legal tres días antes de la vista señalada al cerrar su oficina para ingresar a las fuerzas armadas. Señaló, además, que el Licenciado Sálamo no había tenido el beneficio de que se le suspendiera la misma y de prepararse debidamente para tal evento, de manera que el tribunal tuviera ante sí todos los hechos pertinentes para adjudicar la controversia conforme a derecho. Continuó sosteniendo que no existía pensión alimentaria provisional fijada ni deuda alguna. Esta moción, conjuntamente con otras peticiones de la recurrida solicitando se encontrara incurso en desacato al peticionario y se aumentara la pensión alimentaria, además de los incidentes que estaban pendientes, fueron considerados en la vista celebrada el 27 de junio de 1996 ante el Juez Orama Monroig. Es de rigor señalar que el peticionario no sometió copia de la minuta de la vista celebrada el 27 de junio de 1996. No surge de la resolución dictada por el juez recurrido ni de los otros escritos presentados en este recurso, que en dicha vista el peticionario solicitara presentar prueba para atacar la validez de la estipulación. Tampoco existe la petición de que se hiciera un récord de prueba ofrecida y no admitida.

Luego de escuchar la argumentación oral de las respectivas representaciones legales de las partes, el tribunal recurrido concluyó que en la vista del 2 de octubre de 1995 las mismas estipularon una deuda por concepto de pensión alimentaria y que ello constituia cosa juzgada. En consecuencia, determinó que el peticionario tenía que pagar la partida de $5,713.05 para el 1 de julio de 1996 bajo apercibimiento de ser arrestado y encarcelado.

Inconforme con dicho dictamen y antes que el tribunal emitiera su resolución por escrito, el peticionario presentó el 28 de junio de 1996 ante ese foro recurrido una Moción Solicitando Reconsideración y en Solicitud del Debido Proceso de Ley. Alegó que: (i) la vista celebrada el 27 de junio de 1996 era para disponer sobre todas las mociones pendientes de resolución y que conforme a las instrucciones del tribunal la misma fue para oír la argumentación de las partes sin ser una evidenciaria, por lo que se le privó del debido proceso de ley conforme a lo resuelto en *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616 (1986). ▇ (ii) se le ordenó depositar el dinero alegadamente adeudado en o antes del 1 de julio, aun cuando él había sido cesanteado de su empleo y no había podido conseguir trabajo; (iii) que en esa determinación no se tomó en consideración que desde el 1982 hasta el 1991 había tenido la custodia de su hijo y le proveía la totalidad de su sustento; (iv) que no se le permitió presentar una reconsideración y oponerse al procedimiento llevado a cabo; (v) que el tiempo permitido para la argumentación fue limitado; (vi) y que se requería presentar prueba testifical y documental. Volvió a argumentar sobre la inexistencia de la deuda y solicitó que el tribunal dejara sin efecto su orden y señalara una vista evidenciaria o, en la alternativa, en caso de mantener su dictamen sobre la alegada deuda, dictaminara ello por escrito concediéndole un plan de pago de conformidad a su situación económica. Finalmente, y para sostener que no era correcto que de la cinta escuchada por los Jueces Martínez de Cuevas y Orama Monroig *"...no surgía evidencia que apoyara la veracidad de las alegaciones del promovido",* ▇ incluyó como anejo un escrito, no jurado, firmado por el Lcdo. Sálamo Pérez, en donde éste señala que no se le concedió la suspensión de la vista y que él ofreció la suma de $3,000.00 para finiquitar la controversia, lo cual no fue aceptado por la recurrida, provocando la intervención de la Jueza, quien determinó que la deuda era de

$7,200.00; y que:

*"Acto seguido y en presencia de la Juez, le pregunté al Sr. Rivera si él aceptaba esa cantidad ya que de no aceptarla sería ingresado en la cárcel en ese mismo instante. Ante esa disyuntiva el Sr. Rivera me expresó "no tengo alternativa", ¿pués que voy hacer"?, ¿cuándo los tengo que pagar"?, "yo estoy sin trabajo, necesito tiempo para conseguirlo".* ■

En resolución parcial del 1 de julio de 1996 el tribunal recurrido atendió en los méritos dicha moción y dejó sin efecto, solamente, lo relativo al pago inmediato de la deuda por concepto de pensiones alimentarias y el apercibimiento de desacato. ■ Ese mismo día el peticionario presentó este recurso de *certiorari*, imputándole al Tribunal de Primera Instancia que erró al:

*"1. abusar de su discreción imponiéndole el pago de la totalidad de la alegada deuda para el 1 de julio de 1996 sin considerar su falta de capacidad de pago;*

*2. abusar de su discreción y violar el debido proceso de ley al no permitir la presentación de prueba en dicha vista, ni permitirle presentar una reconsideración;*

*3. al no aplicar correctamente las disposiciones de ley y su jurisprudencia interpretativa."*

La cuestión medular a considerar en este recurso es si la estipulación a que llegaron las partes fue apropiadamente impugnada con anterioridad a la vista celebrada el 27 de junio de 1996; o posteriormente a la misma; o nunca ha sido impugnada conforme a derecho. En el primero de los casos, o sea, de haberlo planteado antes de dicha audiencia, habría que determinar si el peticionario hizo un planteamiento que ameritara una vista evidenciaria y, por consiguiente, el tribunal recurrido cometió algún error. En la segunda alternativa, o sea, si tal planteamiento se hizo válidamente con posterioridad a la vista celebrada, habría que determinar a cuál tribunal le corresponde entender en el mismo, incluyendo la procedencia de una nueva vista evidenciaria ante la sustancia de lo allí planteado. ■ Finalmente, si la nulidad de la estipulación nunca fue planteada apropiada y válidamente, el peticionario no tiene fundamento para alegar que se cometió el error imputado ya que nuestro sistema de derecho es rogado. Veamos.

**II**

El primer error resulta académico, por razón de lo dispuesto en la resolución parcial emitida por el juez recurrido el 1 de julio de 1996, mediante la cual dejó sin efecto la orden de pago bajo apercibimiento de encarcelación del peticionario.

Acorde con lo solicitado por el peticionario en su moción de reconsideración del 28 de junio de 1996, donde le solicitó al Tribunal de Primera Instancia que *"... deje sin efecto su orden dictada el 27 de junio de 1996 y señale una vista evidenciaria o en la alternativa de mantenerse este tribunal en su dictamen con respecto a la alegada deuda, provea así disponiéndolo por escrito, pero concediendo un plan de pago conforme a las disposiciones jurisprudenciales en el caso Rodríguez Beruff, supra,..."* y a su situación económica, dicho foro señaló la vista para determinar su capacidad de pago, según surge de sus resoluciones del 3 y del 17 de julio de 1996, *supra*.

**III**

Procedemos a discutir los restantes dos errores conjuntamente por estar íntimamente relacionados.

Primeramente precisaremos cuáles son las normas de derecho aplicables, pues la controversia surge de una estipulación de las partes y de la solicitud posterior de una de ellos para que la misma se deje sin efecto.

Cuando las partes suscriben una estipulación para poner fin a una controversia presentada ante los tribunales y la misma es ratificada por el tribunal, como ocurrió en este caso, ese acuerdo se convierte en un contrato entre las partes, cuyo cumplimiento debe ser conforme a sus términos y condiciones. Constituye una sentencia cuya obligatoriedad no ofrece dudas. *Caez v. U.S. Casualty,* 80 D.P.R. 754 (1958), *Sucn. Román v. Shelga Corp.,* 111 D.P.R. 782, 787(1981).

La estipulación a la que hacemos referencia es en esencia un contrato de transacción. El contrato de transacción está definido por el Código Civil en su artículo 1709, 31 L.P.R.A. sec. 4821, el cual dice así:

*"La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo, cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado."*

Véase: *Cooperativa de Seguros Múltiples de P.R. v. Lugo,* **94 J.T.S. 77,** Op. de 25 de mayo de 1994, *Citibank v. Dependable,* 121 D.P.R. 503 (1988); *Negrón Rivera y Bonilla, Ex Parte,* 120 D.P.R. 61 (1987). En lo que no sean compatibles con las normas que regulan los contratos de transacción, *"son de aplicación las reglas generales sobre la interpretación de los contratos".* Por ello, como en todo contrato, han de concurrir los requisitos de consentimiento de los contratantes, objeto cierto que su contrato y causa de la obligación que se establezca. Art. 1231 del Código Civil, 31 L.P.R.A. sec. 3391. *"Existe el consentimiento de los contratantes, ya que tiene que ser consensual; su objeto es la controversia entre las partes la polémica judicial o extrajudicial- pues sin ella no puede existir la transacción; y su causa consiste en la eliminación de la controversia mediante recíprocas concesiones, pues si bien tiene el propósito de desaparecer un conflicto pendiente, se diferencia de otras figuras contractuales que tienen la misma finalidad, en que ello se logra mediante renuncias mutuas".* *Neca Mortgage Corp. v. A. & W. Developers S.E. y otros,* **95 J.T.S. 10,** Op. del 7 de febrero de 1995, pág. 604.

El artículo 1715 del Código Civil, 31 L.P.R.A., sec. 4827, recoge el principio favorable a la autoridad de la cosa juzgada para lo convenido en la transacción. *"Esto significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos, y no pueden volver nuevamente sobre éstos. Citibank v. Dependable Ins. Co. Inc., 121 D.P.R. 503, 516 (1988). También significa que la transacción judicial es la única que tiene fuerza para abrir la vía de apremio, es decir, pedir la ejecución como si se tratara de una sentencia firme".* *Neca Mortgage Corp. v. A. & W. Developers S.E. y otros, supra.* pág. 604. De no ser así perdería la transacción su razón de ser y existir. *Canino v. Bellaflores,* 78 D.P.R. 778 (1955).

Si analizamos los hechos de este caso a la luz de las normas de derecho antes expuestas, surge que en las dos mociones presentadas por el peticionario, con posterioridad a la vista del 2 de octubre de 1995, en la cual se efectuó la estipulación de lo adeudado, y antes de la vista del 27 de junio de 1996, cuando se emitió el dictamen recurrido, éste no hizo ningún planteamiento impugnando la validez de ese acuerdo. Solamente alegó la inexistencia de tal deuda, la cual había estipulado. Ciertamente ello no era motivo para que el tribunal recurrido tuviera que celebrar una vista evidenciaria y volver a pasar juicio sobre los méritos de lo adeudado. De hecho, en ningún momento en dichas mociones el peticionario impugnó, fuera de la existencia de la deuda, lo que surge de la minuta de la vista del 2 de octubre de 1995, donde estuvo representado por el Lcdo. Sálamo Pérez, en lo que respecta a que:

Luego de un extenso diálogo los abogados informan la siguiente estipulación:

*"Las partes acuerdan deuda de $7,200.00 al día de hoy.*

*El demandado se compromete a satisfacer dicha deuda en sesenta días depositando a través de ASUME. Va a hacer las gestiones con el plan médico. Le ha radicado caso de delito a su hijo y se compromete a solicitar el archivo del mismo.*

*El Tribunal hizo constar que se atendieron todos los asuntos pendientes hoy en corte abierta.*

*Se refiere este caso a la Trabajadora Social para recomendación sobre relaciones filiales.*

*En estos momentos el Tribunal impone $300.00 por concepto de honorarios de abogado.*

*El Tribunal advierte a las partes de desacato civil al demandado de incumplimiento con la pensión alimentaria y a la demandante de cooperar con la Trabajadora Social."*

Tampoco, según dijimos anteriormente, se desprende de los escritos presentados por el

peticionario, de las resoluciones dictadas por el juez recurrido ni de ningún otro documento presentado en este recurso, que se hiciera planteamiento alguno de tal naturaleza en la vista celebrada el 27 de junio de 1996, ni que el peticionario solicitara al tribunal recurrido en esa ocasión presentar algún testigo encaminado a levantar la nulidad de la estipulación. En ausencia de tal planteamiento, para el cual ciertamente el tribunal hubiera venido precisado a celebrar una vista evidenciaria, era improcedente que ese foro pasara juicio nuevamente sobre lo relacionado con dicha deuda, toda vez que había sido estipulada y ello constituía un contrato entre las partes.

Luego de la celebración de una vista y de emitirse el dictamen objeto de este recurso, es que por primera vez el peticionario alega que se le violentó el debido proceso de ley, acompañando una declaración, no jurada, del licenciado Sálamo donde ofrece unos datos sobre las circunstancias en que se estipuló lo adeudado. Ciertamente ello no estuvo disponible para ser considerado por el Tribunal de Primera Instancia en la vista celebrada ni con posterioridad a presentarse ante nos este recurso, como tampoco lo podemos hacer nosotros ya que ello no está cubierto en el dictamen judicial recurrido y, en todo caso, hubiera tenido que ser atendido por ese foro.

Es sabido que las partes en un pleito deben brindarle al Tribunal de Primera Instancia una oportunidad adecuada para resolver los asuntos que deseen plantear en un recurso de *certiorari*. *Autoridad de Fuentes Fluviales v. Corte,* 65 D.P.R. 935, 937 (1946); *Giménez v. Corte,* 56 D.P.R. 236, 239 (1940); *González v. Corte,* 54 D.P.R. 489, 492-493 (1939). Ciertamente lo relativo a la posible nulidad de la estipulación no fue objeto de alegaciones ni debidamente planteado en instancia. Por ello *"...[e]stamos, pues, impedidos en esta etapa apelativa de dilucidar ese extremo.*

*Así nos adherimos a la norma vigente de que en apelación nos abstendremos de adjudicar cuestiones no planteadas en primera instancia. Sánchez v. Eastern Air Lines, Inc., 114 D.P.R. 691 (1983); Santiago Cruz v. Hernández Andino, 91 D:P.R. 709, 712 (1965)." Trabal Morales v. Ruiz Rodríguez,* 126 D.P.R. 340, 351 (1990).

Así, es forzoso concluir que dicho foro estaba impedido de considerar prueba adicional sobre la deuda de pensión alimentaria, pues había sido estipulada previamente por las partes. La *"estipulación de un hecho sustituye la "prueba que hubiera sido presentada en la vista del caso". Mora Dev. Corp. v. Sandín,* 118 D.P.R. 733 (1987). Como sólo tenía ante sí el incumplimiento con el pago de la misma, no cometió el error imputado. ▪

## IV

En los casos apropiados las partes tienen a su disposición, para solicitar la nulidad de una estipulación, el mecanismo de la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véase *E.L.A. v. Tribunal Superior;* 86 D.P.R. 692 (1962) y *Banco Santander de P.R. v. Fajardo Farms Corp,* **96 J.T.S. 100,** Op. del 28 de junio de 1996.

De haberse formulado un planteamiento válido por el peticionario, tampoco nos correspondería en este recurso pasar juicio sobre el mismo ya que, además de que el mismo tenerse que dilucidar en el Tribunal de Primera Instancia, *infra*, se presentó luego que dicho foro emitió el dictamen recurrido y a los ocho (8) meses y veintisies (26) días luego de haberse efectuado la estipulación concernida. Por otro lado, el peticionario no acreditó el relevo de la estipulación solicitada en cumplimiento con la Regla 49.2, *supra*, ya que no acompañó una declaración jurada consignando hechos específicos conforme a la norma establecida por nuestro Tribunal Supremo. *Correa v. Marcano,* 139 D.P.R. ___ (1966), **96 J.T.S. 1,** pág. 543: *Dávila v. Hosp. San Miguel, Inc.,* 117 D.P.R. 807, 818 (1986); *Díaz v. Tribunal Superior,* 93 D.P.R. 79, 89 (1966). ▪ *Henríquez v. Consejo de Educación Superior, 1*20 D.P.R. 194 (1987). No hay duda de que el peticionario estaba notificado de que en esa ocasión se iba a ver la vista de desacato y que se le estaba imputando que debía determinado dinero por concepto de pensiones alimentarias.

## V

Finalmente nos llama la atención el señalamiento del peticionario de que la recurrida, madre del menor, no tenía capacidad para solicitar el pago de la pensión alimentaria adeudada.

Como se dijo en *Ríos Rosario v. Vidal Ramos:*

*"Mientras los hijos se encuentren en estado de minoridad y no hayan sido emancipados por razón de matrimonio o dictamen judicial, los derechos de la patria potestad facultan al progenitor interesado a reclamar el pago de aquellas pensiones a nombre de los hijos, siempre y cuando no estén prescritas."* Ríos Rosario v. Vidal Ramos, **93 J.T.S. 113,** Op. de 30 de junio de 1993, pág. 10959.

Dentro de los deberes que tienen los padres respecto a sus hijos no emancipados está el de representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho. Art. 153, Código Civil, 31 L.P.R.A. sec. 601. Por tal razón, la acción para solicitar el pago de las pensiones alimentarias adeudadas a hijos menores no emancipados es una en la cual el padre o madre con patria potestad o custodia tiene el perfecto derecho de presentar. Por lo tanto, la madre recurrida en este caso podía reclamar las pensiones alimentarias atrasadas.

## VI

En resumen, el Tribunal de Primera Instancia actuó correctamente al no admitir prueba para dejar sin efecto una estipulación cuando no tenía ante sí ninguna solicitud para ello. La solicitud del peticionario para que se admitiera prueba equivalía a relitigar lo estipulado, lo que sólo hubiera procedido luego que se dejara sin efecto la estipulación, solicitud que él no planteó oportunamente ni fudamentó conforme a derecho.

No está permitido en derecho el diversificar los fundamentos para solicitar se dejen sin efecto o se modifiquen los dictámenes de los tribunales. Una persona no tiene derecho a que sus reclamaciones adquieran permanencia en los tribunales. *Madera Meléndez v. Negrón,* 103 D.P.R., 749, 751 (1975); *Helftler Const. Co. v. Tribunal Superior,* 103 D.P.R., 844, 847 (1976) y *Santiago Dávila v. F.S.E.,* 113 D.P.R. 627; 632 (1982), máxime cuando se está hablando de casos donde están envueltos alimentos a los hijos menores de edad, lo que reviste el más alto interés público. *Rodríguez Vélez v. Rodríguez Beruff, supra.* Menos aún es permisible solicitar la reapertura de un caso para plantear defensas renunciadas, excepto aquellas que producen la nulidad absoluta en claro perjuicio de las otras partes y en contravención a lo dispuesto en la Regla 1 de las de Procedimiento Civil, *supra.* La Regla 49.2, *supra,* no sería el mecanismo para ello ni para encubrir la falta de diligencia de una parte o atender el capricho de reabrir la adjudicación de una controversia correctamente dictada. *Olmeda Nazario v. Sueiro Jiménez,* 123 D.P.R. 294, 299.

## VII

De conformidad con lo antes expresado, se deniega la expedición de este recurso.

Así lo pronunció y manda el tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 96 DTA 115

**1.** En cuanto a las actitudes de los representantes legales de las partes en los escritos de todo caso, coincidimos con las atinadas expresiones del tribunal recurrido. Es lamentable que algunos abogados insistan en este foro en utilizar en sus escritos calificativos personales ofensivos, como hace la representación legal de la recurrida en este caso, repitiendo los mismos en lugar de analizar con objetividad las controversias y sus posiciones, que es lo único que puede ayudar a sus clientes y a los tribunales a impartir justicia.

**2.** Véase Resolución del 4 de julio de 1996, *infra,* de donde, además, surge que la Jueza Martínez Cuevas se inhibió de continuar actuando en dicho caso.

**3.** En este aspecto indicó que *"...este Honorable tribunal no ha permitido ni tan siquiera, presentar reconsideración ante este foro en corte abierta, ni de oponerse al procedimiento llevado. El escaso tiempo permitido para argumentación y la carencia de la presentación de evidencia testifical y documental constituyen en una violación al debido proceso de ley".*

**4.** No puede haber duda alguna que la mejor prueba para ello hubiera sido la transcripción de dicha grabación. Tampoco surge de ningún escrito que las partes solicitaran oír dicha grabación.

**5.** El peticionario no elaboró ni hizo argumentación adicional sobre este aspecto.

**6.** Posteriormente el tribunal recurrido redujo a escrito su resolución dada en corte abierta tomando en consideración la moción de reconsideración que había presentado el peticionario el 28 de junio de 1996. La determinación sobre la procedencia de un desacato por el incumplimiento de la referida deuda quedó pendiente de la celebración de una vista evidenciaria en atención a lo resuelto en *Rodríguez Avilés v. Rodríguez Beruff, supra*, la cual fue fijada en dicha resolución del 3 de julio para el 17 de julio de 1996. De la moción presentada por la recurrida el 30 de julio pasado, surge que dicha vista comenzó a celebrarse el día fijado, 17 de julio anterior. A esos efectos, acompañó copia de una resolución emitida por el tribunal recurrido el 17 de julio de 1996, de donde surge que aunque el Tribunal de Primera Instancia está celebrando una vista evidenciaria para considerar las razones que tuvo el peticionario para no efectuar el pago de lo adeudado, el mismo reconoce que la imposición del desacato está paralizado hasta tanto este foro resuelva este recurso.

**7.** Cuando se presenta un *certiorari* ante este foro apelativo, no quedan suspendidos los procedimientos en el tribunal recurrido y menos en este caso en que el remedio en controversia es una orden de pago de alimentos. Regla 35 de nuestro Reglamento. Véase *Carrera González v. Rodríguez Rodríguez,* **96 J.T.S. 11**, Op. del 25 de enero de 1996. En el caso de que se presente un recurso prematuro en un tribunal apelativo por razón de que la sentencia apelada todavía no es final, éste no tendría competencia. Véase: *Pfizer International Bank v. Ana L. Mayoral*, **95 D.T.A. 270**, Op. del 19 de octubre de 1995.

**8.** El peticionario sólo alegó, luego de producirse el dictamen judicial recurrido, que no se cumplió con el debido proceso de ley. Para satisfacer las garantías del debido proceso de ley debe cumplirse con estas garantías: notificación adecuada del proceso, tramitación y juicio ante un juez imparcial, oportunidad de ser oído, derecho a contrainterrogar testigos y examinar evidencia presentada en su contra, asistencia de abogado y que la decisión se fundamente en el récord. *Feliciano Figueroa v. Toste Piñero,* **93 J.T.S. 161**, Op. del 15 de septiembre de 1993. *Ortiz Cruz v. Junta Hípica*, 101 D.P.R. 791 (1973).

**9.** Para aplicar la norma general de derecho de que las amenazas de utilizar los remedios legales no equivalen a una intimidación y sus excepciones hay que examinar los hechos de cada caso en particular. *Rivera v. Banco Industrial de Puerto Rico,* 49 D.P.R. 709 (1936) y *Rodríguez v. M. Joglar & Co., S en C*, 46 D.P.R. 338 (1934).